1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**
9                          **CENTRAL DISTRICT OF CALIFORNIA**
10                              **WESTERN DIVISION**
11
12   RANDEE WILLIAMS,                    )   No. CV 17-04884-JAK (PLA)
                                         )
13                   Plaintiff,          )   **FINAL REPORT AND RECOMMENDATION**
                                         )   **OF UNITED STATES MAGISTRATE JUDGE**
14          v.                           )
                                         )
15   M. CONKLE, *et al.*,                )
                                         )
16                   Defendants.         )
                                         )
17   _____ )
18          This Final Report and Recommendation is submitted to the Honorable John A. Kronstadt,
19   United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United
20   States District Court for the Central District of California.  For the reasons discussed below, the
21   Magistrate Judge recommends that defendants' Motion for Summary Judgment (ECF No. 179)
22   be granted and the action dismissed with prejudice.
23   /
24   /
25   /
26   /
27   /
28   /

# I.

## SUMMARY OF PROCEEDINGS

On July 3, 2017, plaintiff, a state prisoner presently held at California State Prison in Represa, California, filed a *pro se* civil rights action herein pursuant to 42 U.S.C. § 1983.  He subsequently was granted leave to proceed without prepayment of the full filing fee.   In his Complaint, plaintiff named as defendants Dr. Conkle, Dr. Mintz, and Ms. Tang.  All defendants are alleged to be clinical psychologists at California State Prison, Lancaster ("CSP-LAC").  (See ECF No. 1 at 3).  Plaintiff's claims arise from an incident that occurred on July 13, 2015, while plaintiff was being held at CSP-LAC.  (*Id.* at 2-3, 5).

In accordance with the mandate of the Prison Litigation Reform Act of 1995 ("PLRA"), the Court screened the Complaint prior to ordering service for the purpose of determining whether the action is frivolous or malicious; or fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915A, 1915(e)(2); 42 U.S.C. § 1997e.  After careful review and consideration of the Complaint, the Court found that plaintiff's allegations appeared sufficient to state a plausible claim against the named defendants, and the United States Marshal was authorized to proceed with service of process on defendants.  (ECF No. 10).

Plaintiff later sought leave to file an amended complaint.  (ECF No. 41).  In accordance with the Court's Minute Order of June 19, 2018, a "supplement" that plaintiff had filed was appended to plaintiff's original Complaint, and the entire document is considered as plaintiff's First Amended Complaint (ECF No. 46; "FAC").  (See ECF No. 45).  The FAC is verified by plaintiff in two places.  (ECF No. 46 at 15, 22).  The FAC names as defendants the same three prison officials, Conkle, Mintz, and Tang.  (*Id.* at 3).  Plaintiff raises claims for deliberate indifference to his serious mental health needs and a conspiracy among the three defendants arising from a suicide attempt plaintiff made on July 13, 2015.  (*Id.* at 5-6, 18).  The FAC is the operative pleading herein.

On March 15, 2022, defendants filed a Motion for Summary Judgment.  (ECF No. 179; "Motion").  The Motion is accompanied by defendants' Statement of Uncontroverted Facts and Conclusions of Law (ECF No. 179-1; "SUF"); a First Declaration of Counsel, accompanied by

2

relevant pages of the certified transcript of plaintiff's deposition (ECF No. 179-2; "Plaintiff's Depo."); a Declaration of M. Conkle, accompanied by Exhibits A to B (ECF No. 179-3; "Conkle Decl."); a Declaration of S. Mintz, accompanied by Exhibit A (ECF No. 179-4; "Mintz Decl."); a Declaration of Manuel Saint Martin, M.D., accompanied by Exhibits A to J (ECF No. 179-5; "Martin Decl."); and a Declaration of T. Tang, accompanied by Exhibit A (ECF No. 179-6; "Tang Decl."). Defendants contend that they are entitled to summary judgment on the grounds that they were not deliberately indifferent to plaintiff's serious mental health needs, defendants did not conspire to deprive plaintiff of a constitutional right, and defendants are entitled to qualified immunity.[1]

Plaintiff was provided with notice of the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56 regarding filing an opposition to a motion for summary judgment. Plaintiff was admonished that he must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Federal Rule 56(e), that contradict the facts shown in defendants' declarations and documents to show that a genuine issue of material fact exists for trial. (ECF Nos. 179 at 2-3; 180). Plaintiff additionally was admonished that, pursuant to Local Rule 56-2, he must file a separate document entitled "Statement of Genuine Issues," which must set forth concisely all material facts as to which he contends there exists a genuine issue necessary to be litigated. Further, the "Statement of Genuine Issues" must: (a) specify, for each of the facts listed as uncontroverted in defendants' "Statement of Uncontroverted Facts and Conclusions of Law," whether plaintiff concedes that such fact is undisputed, and, if not, the evidence that he believes establishes that the fact remains in dispute; and (b) list all other material facts that he contends are in dispute, and specify for each such fact the evidence that he believes establishes that the fact is in dispute. (*Id.*).

Following an extension of time, on May 13, 2022, plaintiff filed an 82-page document in Opposition to the Motion. (ECF No. 183; "Opposition"). Plaintiff did not file a separate "Statement of Genuine Issues" as required by Local Rule 56-2. Rather, within his Opposition is a portion

---

[1] The Court's finding, below, that plaintiff has failed to create a genuine dispute in any material fact renders it unnecessary for the Court to reach defendants' contention that they are entitled to qualified immunity.

entitled "Statement of Genuine Issues" ("Plaintiff's SGI") that references a "sworn verified declaration with supporting documents of geniune [sic] issue's [sic] of material facts in opposition to defendants [sic] summary judgment." (*Id.* at 29).  This document, which is signed by plaintiff under penalty of perjury (*id.* at 29, 36), contains 24 numbered paragraphs that set forth facts and reference plaintiff's Exhibits A to M, but Plaintiff's SGI **does not** cite to Defendants' SUF or to any of their proposed undisputed facts.  (*Id.* at 29-35).  Further, within his Opposition, plaintiff cites appropriate legal authority regarding the requirements for filing an opposition to a motion for summary judgment, thereby demonstrating that plaintiff was fully aware of what evidence he was required to file to oppose defendants' Motion.  (See *id.* at 21-22).  However, although plaintiff's Opposition begins with a numbered list of the proposed undisputed facts from Defendants' SUF, plaintiff merely states that he "denies," "admits," or "has not been able to verify, therefore plaintiff is unable to admit or deny" each fact.  (*Id.* at 1-10).  For most of the facts that plaintiff "denies," he points to no evidence.  For some facts, plaintiff points generally to an exhibit, without citing a specific portion of the exhibit.  In addition, plaintiff states that he "has not received any declaration" from defendants Conkle and Tang, and he "denied" multiple proposed undisputed facts on this ground without pointing to any evidence.  (*Id.* at 1, 3-4, 7-8).

Defendants filed their Reply on June 10, 2022 (ECF No. 184), supported by a second Declaration of Counsel (ECF No. 184-1) and Objections to Plaintiff's Evidence (ECF No. 185).  In the second Declaration of Counsel, defendants' counsel states that she mailed the entire Motion for Summary Judgment to plaintiff, including all supporting declarations, in one envelope.  Plaintiff's contention that he received some of the Motion, but he did not receive two of the declarations, is baseless.  (ECF No. 184-1 at 2).  In their Reply, defendants argue that summary judgment should be granted because plaintiff failed to raise a genuine dispute of material fact.  (ECF No. 184).  Defendants also object to plaintiff's Opposition on the grounds that plaintiff misstates the evidence in the record and plaintiff's own evidence lacks foundation, is not authenticated, or is irrelevant or hearsay.  (ECF No. 185).  In addition, defendants object to plaintiff's Exhibit E because it is not the operative pleading herein and the document that he

attached lacks foundation.  (ECF No. 185 at 5-6).

## II.

## STANDARD OF REVIEW

In deciding a motion for summary judgment pursuant to Rule 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Id. at 248.  "[I]nferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (alteration omitted from original).  At the summary judgment stage, a judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Tolan v. Cotton, 572 U.S. 650, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (quoting Anderson, 477 U.S. at 249). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence, as those are functions reserved for the jury." Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017) (internal citation, quotation marks, and alterations omitted).

Further, a "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see also Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").  "The nonmoving party must do more than show there is some metaphysical doubt as to the material facts at issue." Dzung Chu v. Oracle Corp., 627 F.3d 376, 387 (9th Cir. 2010) (internal quotation marks omitted).  As required by the language of Rule 56(c),

a party who wishes to show that a "fact" is "genuinely disputed," must support such an assertion by "citing to particular parts of materials in the record," including affidavits or declarations. However, any "affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Thus, to defeat summary judgment, the nonmoving party "must present affirmative evidence," and a "mere scintilla of evidence" supporting the nonmoving party is insufficient. Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007) (citing Anderson, 477 U.S. at 248).  In addition, on issues "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Dzung Chu, 627 F.3d at 387 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Here, because plaintiff is proceeding *pro se*, the Court has an obligation to liberally construe the documents he files.  See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (noting that a "document filed *pro se* is 'to be liberally construed'"). Additionally, because plaintiff is a *pro se* prisoner litigant, the Court will not hold plaintiff to strict compliance with summary judgment rules.  See, e.g., Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[p]ro se inmates are, however, expressly exempted from" the rule that *pro se* litigants "must comply strictly" with summary judgment rules); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).  Further, on a motion for summary judgment, a district court may consider inadmissible evidence as long as the evidence could be presented in an admissible form at trial. Fraser v. Goodale, 342 F. 3d 1032, 1036-37 (9th Cir. 2003).  Plaintiff's status as a *pro se* prisoner litigant, however, does not exempt him from the rule of evidence that only factual statements "based on [a party's] personal knowledge and attested to under penalty of perjury" can be considered as evidence.  King v. Cnty. of L.A., 885 F.3d 548, 553 (9th Cir. 2018) (citing Jones, 393 F.3d at 923).  In light of these standards, the Court will consider plaintiff's evidence that appears as if it could be adduced in a form admissible at trial and his statements to which he

attested that appear to be based on plaintiff's personal knowledge.

### III.

### EVIDENTIARY ISSUES

Initially, although plaintiff objects that he "has not received any declaration" from defendants Conkle or Tang (ECF No. 183 at 1, 3-5, 7-9), defendants' counsel attested that those declarations were included in the same envelope with defendants' Motion and the remainder of defendants' evidence (ECF No. 184-1 at 2).  Because plaintiff has never indicated that he did not receive defendants' Motion or their other evidence, the Court finds plaintiff's attempt to "deny" some of defendants' proposed undisputed facts on the ground that he failed to receive these two declarations to be unavailing.  (ECF No. 183 at 3-4, 7-8).

In their Reply, defendants raise objections to plaintiff's use of his exhibits in that he mis-states the evidence, his exhibits lack foundation, and the exhibits are not authenticated. (ECF No. 185 at 2-13).  Defendants also object to some of plaintiff's evidence as hearsay or irrelevant. (*Id.* at 3-13).  Further, to the extent that plaintiff is purporting to dispute any of defendants' proposed undisputed facts with his repeated statement -- "Plaintiff has not been able to verify, therefore plaintiff is unable to admit or deny the defendants [sic] SUF" (ECF No. 183 at 2, 4-10) -- because this statement does not comply with the requirement of Rule 56(c) that plaintiff support an assertion that a proposed undisputed fact is disputed by citing to specific evidence in the record, the Court finds that plaintiff's inability to "verify" a fact cannot establish that such fact remains in dispute.  Rather, in order to defeat defendants' Motion, plaintiff "must present affirmative evidence." See, e.g., Galen, 477 F.3d at 658.  Accordingly, the Court has deemed those proposed undisputed facts that plaintiff states he is "unable to admit or deny" to be undisputed.

The Court sustains defendants' objections to plaintiff's Exhibit A, which is one unauthenticated page from plaintiff's Interdisciplinary Progress Notes that contains unidentified underlining of a partial sentence.  Plaintiff did not author this page.  Even if it could be authenticated for trial, Exhibit A merely states that plaintiff was referred to a "MH crisis line" by a

unit correctional officer "for reports of being 'suicidal.'" (ECF No. 183 at 37-38).  The Exhibit does not reflect that plaintiff informed any medical official about a specific plan to cut his wrist or that he was "very suicidal" on the day of the incident.  The Court additionally sustains defendants' objections to plaintiff's Exhibit B, which consists of one unauthenticated page that appears to be partial responses by defendant Dr. Conkle to plaintiff's requests for admission.  The only admissions are that Dr. Conkle arrived to evaluate plaintiff on July 13, 2015, while plaintiff was being held in the shower because he was "having suicidal thoughts" and that it was "common practice" to have custody staff "place suicidal inmates in the shower awaiting suicidal risk evaluation." (ECF No. 183 at 39-40).  Once again, even if this Exhibit were to be authenticated, the portion that plaintiff references supports defendants' proposed undisputed facts showing that they provided plaintiff with mental health treatment after he expressed an intent to commit suicide.

Similarly, the Court sustains defendants' objections to plaintiff's Exhibit C and Exhibit D. Plaintiff's Exhibit C is an unauthenticated portion of a Health Care Appeal that plaintiff dated July 21, 2015, in which plaintiff states that he said that he "had a plan" but he does not state what his plan was, that he informed any prison official that he intended to use a razor to cut his wrist, or that he informed anyone about any specific plan at any relevant time.  (ECF No. 183 at 41-43). Plaintiff's Exhibit D is one unauthenticated page that appears to be a portion of defendant Dr. Conkle's responses to requests for admission.  In his Opposition, plaintiff references Line # 12, in which Dr. Conkle admits that plaintiff "did tell you he was suicidal and plan [sic] on killing himself," but, even if authenticated, this Exhibit does not dispute Dr. Conkle's evidence that plaintiff did not tell her about a specific plan.  (ECF No. 183 at 44-45).

Additionally, the Court sustains defendants' objections to plaintiff's Exhibit F and Exhibit G. Plaintiff's Exhibit F is an unauthenticated page that appears to be a portion of defendant Ms. Tang's responses to plaintiff's requests for admission.  Plaintiff (or someone else) made marks next to two responses, neither of which are inconsistent with the testimony provided by Ms. Tang in her Declaration.  (ECF No. 183 at 63-64).  Plaintiff's Exhibit G appears to be unauthenticated portions of discovery responses by Dr. Conkle and Dr. Mintz, on which some marks were made

by an unidentified individual.  Again, the contents of this exhibit, even if authenticated, are not inconsistent with the testimony provided by defendants in their declarations.  (*Id.* at 65-68).

Plaintiff's Exhibit H also is unauthenticated and lacks foundation.  It appears to contain a brief portion of notes from an unidentified source regarding the notification of "medical" following plaintiff's attempted suicide on July 13, 2015.  (ECF No. 183 at 69-70).  This Exhibit, even if authenticated, does not appear to dispute any of defendants' proposed undisputed facts.  Additionally, plaintiff's Exhibit I appears to be an unauthenticated one-page partial copy of plaintiff's Interdisciplinary Progress Notes from July 13, 2015.  This appears to pertain to an evaluation of plaintiff following his suicide attempt.  (*Id.* at 71-72).  Plaintiff's Exhibit J appears to be three pages containing unauthenticated partial responses by Dr. Conkle and Dr. Mintz to plaintiff's discovery requests.  Plaintiff failed to authenticate the alterations made to these pages.  (*Id.* at 73-76).  Further, it is not clear to the Court how plaintiff intended to use these Exhibits to dispute any of defendants' proposed undisputed facts.  For example, Exhibit I concerns health care that plaintiff received subsequent to the suicide attempt that was provided by a medical professional who is not a defendant in this action, it notes that plaintiff was "not suicidal/homicidal," and it does not pertain to any defendant.  (*Id.* at 34, 72).  Plaintiff references responses by Dr. Conkle in plaintiff's Exhibit J in which the defendant explained her reasons for believing that plaintiff was making "contingent threats to harm himself" and why she did not believe that plaintiff met the criteria to remain in the EOP program (*id.* at 34, 74-75) as well as a response by Dr. Mintz stating that it had been "determined . . . that CCCMS[, Correctional Clinical Care Management System] was the most clinically appropriate level of care given his then present diagnosis and his then present functional impairment" (*id.* at 34, 76).  These responses are not inconsistent with defendants' proposed undisputed facts.  Accordingly, the Court sustains defendants' objections to these Exhibits on the grounds that they are unauthenticated, lack foundation, and appear to be irrelevant.

The Court also sustains defendants' Objections to plaintiff's Exhibit K on the grounds of lack of authentication and irrelevance.  This Exhibit appears to be a page taken from an unidentified

source regarding general "Mental Health Services Delivery System."   (ECF No. 183 at 77-78).
Plaintiff's Exhibit L (ECF No. 183 at 79-80) appears to be a one-page portion of a Medical Report
made following plaintiff's suicide attempt.  It is dated July 19, 2015, and it indicates that plaintiff
was found to have two abrasions or scratches with active bleeding on his left wrist.  The Court
sustains defendants' objections to Exhibit L as irrelevant.  It is undisputed that plaintiff made a
suicide attempt by inflicting superficial cuts on his left wrist on July 13, 2015.  Plaintiff's FAC does
not raise any claims against these defendants regarding any events that occurred after July 13,
2015.  (See ECF No. 46 at 3 (listing one incident date of July 13, 2015), 7-10 (setting forth factual
allegations concerning the events of July 13, 2015); ECF No. 183 at 23-25, 27, 29-35 (plaintiff's
Opposition in which he characterizes the facts as showing that, on July 13, 2015, plaintiff was
feeling suicidal and attempted suicide that day; and summarizes his claims against the three
defendants as arising from his risk of suicide on July 13, 2015)).

In addition, the Court sustains defendants' objection to plaintiff's Exhibit E because it is not
the operative pleading herein.  (See ECF No. 183 at 46- 62; ECF No. 185 at 5-6).  To the extent
that plaintiff intends to cite to his FAC in his opposition, the Court will only reference the pleading
that plaintiff filed in this action on June 19, 2018.  (ECF No. 46).

Further, the Court sustains defendants' objections to plaintiff's Exhibit M.  Exhibit M is an
unauthenticated one-page portion of a report concerning suicides in California's prison system in
1998 and 1999.  This Exhibit does not appear to be material.  Unidentified annotations on this
page regarding testimony of a doctor concerning "successful suicides" at an unspecified time are
inadmissible hearsay and are insufficient to create a genuine dispute with the testimony of
defendants' expert witness who reviewed plaintiff's medical records.  (ECF No. 183 at 35, 81-82;
see ECF No. 179-5 at 7-9, 12-14, 17-19, 37, 59).  Further, plaintiff cites to Exhibit M to support his
own inadmissible lay opinions regarding mental illness, malingering, and suicide risk.  Plaintiff has
not adduced any evidence to show that he is qualified to offer an expert opinion regarding mental
health disorders, characteristic symptoms of various disorders, or appropriate treatment of mental
illness.  Accordingly, the Court finds that plaintiff's stated opinions concerning these specialized

areas constitute inadmissible lay opinions pursuant to Rule 701 of the Federal Rules of Evidence on matters requiring "specialized experience." See, e.g., Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (expert testimony on "scientific, technical, or other specialized matters" arises from "specialized experience" and a "reliable basis in the knowledge and experience of [the relevant] discipline").

Finally, the Court sustains defendants' objections to those portions of plaintiff's Opposition that are based on hearsay.  As set forth above, any evidence in a declaration must be made based on personal knowledge and show that the declarant is competent to testify on the matters stated.  Rule 56(c)(4); see, e.g., Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Polanski v. KLM Royal Dutch Airlines, 378 F. Supp. 2d 1222, 1229 n.7 (S.D. Cal. 2005) (to be admissible, "a witness must have actually perceived or observed that which she testifies to").

## IV.

## SUMMARY OF UNDISPUTED MATERIAL FACTS

With the applicable legal standards in mind, the Court finds the material facts set forth below to be undisputed.

Plaintiff is a state prison inmate who suffers from, among other disorders, antisocial personality disorder.  (SUF No. 1).  Plaintiff disputes this by pointing to his Exhibit A, "Interdisciplinary Progress Notes" dated August 5, 2015.  Plaintiff's Exhibit A, however, consists of an unauthenticated page from plaintiff's Interdisciplinary Progress Notes.  (ECF No. 183 at 1, 38).  These Notes reflect that plaintiff has been diagnosed with "Adjustment Disorder With Mixed Disturbance of Emotions and Conduct."  (Id. at 38).  Defendants' evidence reflects that plaintiff's primary diagnosis was "an adjustment disorder with mixed disturbance of emotions and conduct" with secondary and tertiary disorders of personality disorders.  (Conkle Decl., ECF No. 179-3 at 11).  "The core features of antisocial personality disorder are a pervasive pattern of disregarding and violating the rights of others," and "[i]ndividuals with antisocial personality disorder are impulsive and use lying, guile, and violence to manipulate those around them to get what they

want."  "Plaintiff has been receiving mental health care treatment while in the custody" of the
California Department of Corrections and Rehabilitation ("CDCR"), and the "CDCR provides
inmates with mental health treatment at three different outpatient levels of care." (SUF Nos. 2-5).
Plaintiff does not point to any evidence to dispute, and does not dispute, SUF Nos. 2-5. (ECF No.
183 at 1-2).  Accordingly, the Court finds defendants' SUF Nos. 1-5 to be undisputed.

The three levels of mental health care provided by the CDCR include: inmates in the "Non
Mental Health Services Delivery System" have been determined not to require any mental health
services; inmates in the "Correctional Clinical Care Management System ("CCCMS")" have a
"serious mental health diagnosis" or a "functional impairment" and receive individual contacts with
either a psychologist or social worker and with a psychiatrist every 90 days; inmates in the
Enhanced Outpatient ("EOP") level of care "have been determined to have the same qualifying
criteria as those at the CCCMS level of care," but they have a more severe functional impairment
that requires more frequent contact with mental health professionals.  (SUF Nos. 6-8).  A mental
health crisis bed ("MHCB") is "an in-patient level of care for inmates whose acute psychiatric
symptoms cause them to be a danger to themselves or others."  (SUF No. 9).  At the relevant
time, Dr. Conkle was a staff psychologist at the CSP-LAC, and she became plaintiff's clinician in
December 2014.  At that time, plaintiff was being provided mental health treatment at the EOP
level of care.  Dr. Conkle reviewed plaintiff's central files and medical records, spoke with plaintiff's
prior psychologist, and held twenty individual therapy sessions, wellness checks, and follow up
visits with plaintiff between January 5, 2015, and July 8, 2015. (SUF Nos. 10-14).  At each of the
sessions with plaintiff, Dr. Conkle took handwritten notes that she later transferred to plaintiff's
computerized medical records where they are recorded as "Interdisciplinary Progress Notes."
(SUF No. 15).  Attached to Dr. Conkle's Declaration are copies of the Interdisciplinary Progress
Notes documenting her sessions with plaintiff.  (SUF No. 16).  Plaintiff does not dispute SUF Nos.
6-15, and he does not point to any evidence to dispute SUF No. 16.  (ECF No. 183 at 2).
Accordingly, the Court finds defendants' SUF Nos. 6-16 to be undisputed.

When Dr. Conkle first began working with plaintiff, he was cordial and easy to work with,

as noted in the documentation from her first three sessions with plaintiff. (SUF No. 17).  Plaintiff's behavior toward Dr. Conkle changed after he disagreed with Dr. Conkle speaking to officers regarding plaintiff's behavior and plaintiff received a disciplinary write-up for possession of contraband. (SUF No. 18).   Plaintiff disputes SUF No. 18 by stating that Dr. Conkle was "prejudiced towards him," citing his Exhibit B.  (ECF No. 183 at 3).  Plaintiff's Exhibit B is an unauthenticated page that appears to be a portion of responses by Dr. Conkle to plaintiff's requests for admission, and which do not pertain to defendants' SUF No. 18. (*Id.* at 40).  To the contrary, in Exhibit B, Dr. Conkle appears to admit that she arrived to evaluate plaintiff on July 13, 2015, while plaintiff was being held in the shower in response to his claim that he was "having suicidal thoughts," and that it was "common practice" to have custody staff "place suicidal inmates in the shower awaiting suicidal risk evaluation." (*Id.*).  Plaintiff began to refuse to interact with any staff. (SUF No. 19).  After plaintiff realized Dr. Conkle would not permit him to remain in EOP because plaintiff's clinical concerns were not sufficiently severe to meet the criteria for continued placement in EOP, plaintiff's willingness to participate in his mental health treatment declined. (SUF No. 20).  This behavior by plaintiff indicated that he was aware of his actions and the resulting consequences. (SUF No. 21).  Prior to Dr. Conkle's treatment of plaintiff, he had been diagnosed as having a psychotic or thought disorder.  However, Dr. Conkle did not feel his behavior was consistent with either disorder.  (SUF Nos. 22-24).   Plaintiff's actions were predictable and historically well documented -- a clinician could accurately gauge how plaintiff would react to situations based on previous documentation and interactions, whereas an individual with a psychotic or thought disorder is unpredictable. (SUF No. 25).  Dr. Conkle felt this to be significant because it led her to believe that plaintiff's claims of suicidal ideation were feigned, and that plaintiff was malingering.  Other clinicians also believed that plaintiff was malingering. (SUF Nos. 26-27).  Moreover, an individual must experience delusions, hallucinations, disorganized speech, or grossly disorganized or catatonic behavior to be diagnosed with a psychotic disorder. (SUF No. 28).  Although plaintiff has claimed to suffer from hallucinations throughout all of his level-of-care changes, there has never been proof that his claims were valid.  (SUF No. 29).

Plaintiff's medical records document this, as his clinicians have indicated doubt as to whether plaintiff appeared to be hallucinating during their treatment of him. (SUF No. 30). Mental health clinicians are trained to identify the signs that an individual is experiencing hallucinations, as this symptom can often be feigned. (SUF No. 31). Nowhere in plaintiff's medical records that Dr. Conkle reviewed did a clinician document that signs of hallucinations were present while treating plaintiff. Further, at no time during the course of Dr. Conkle's treatment of plaintiff were signs of hallucinations present. (SUF Nos. 32-33). Rather, the signs that were present were indicative of a personality disorder (maladaptive character traits marked by ineffectual responses to social, emotional, intellectual, and physical demands). (SUF No. 34). A primary diagnosis of a personality disorder does not support the need for inclusion in CCCMS or EOP, largely due to the fact that personality disorders are treated with behavioral modification therapy, not with psychopharmacology, and not with the type of mental health treatment that CDCR clinicians practice. (SUF No. 35). Plaintiff disputes SUF No. 17 and Nos. 19-35, but he points to no evidence. (ECF No. 183 at 3-6). Accordingly, the Court finds defendants' SUF Nos. 17-35 to be undisputed.

Dr. Conkle ultimately diagnosed plaintiff with a primary diagnosis of adjustment disorder with mixed disturbance of emotions and conduct, and documented the personality disorders as secondary and tertiary disorders. (SUF Nos. 36-39). Plaintiff's ability to deceive the medical personnel at the various prisons where he has been housed accounts for the various conditions that he has been diagnosed with. (SUF No. 40; ECF No. 179-5, Martin Decl. at 6). Once Dr. Conkle had determined that plaintiff did not have a psychotic or thought disorder, Dr. Conkle began the process of discharging him from the EOP program to the lower level of care that CCCMS provided. (SUF No. 41). Plaintiff does not dispute SUF No. 36. (ECF No. 183 at 6). Plaintiff points to no evidence to support his dispute of SUF Nos. 37-41. (*Id.* at 6). Accordingly, the Court finds defendants' SUF Nos. 36-41 to be undisputed.

Dr. Conkle had tried to discharge plaintiff from EOP before, but each time, plaintiff malingered by claiming he was suicidal and was placed in MHCB before he could be discharged

from EOP.  (SUF No. 42).  Once plaintiff's diagnoses were indicative of justifying a lower level of care, Dr. Conkle informed plaintiff that, at his next review, his appropriate placement would be discussed.  (SUF No. 43).  Due to a lack of bed space on the CCCMS housing unit, plaintiff remained in the EOP housing unit.  (SUF No. 45).  Plaintiff disagreed with Dr. Conkle's plan, as documented by Dr. Conkle in the Interdisciplinary Progress Note dated March 9, 2015.  (SUF No. 44).  On March 18, 2015, plaintiff claimed to have thoughts of suicide and was subsequently placed in MHCB, on the same day that his level of care was lowered.  (SUF No. 46).

On July 9, 2015, Dr. Conkle again attempted to lower plaintiff's level of care from EOP to CCCMS.  The next day, on July 10, 2015, plaintiff filed a healthcare grievance, stating that he would harm himself unless his primary care clinician was changed and he was permitted to stay in EOP.  (SUF Nos. 47-48; citing Ex. B to Conkle Decl., ECF No. 179-3 at 44-45).  "Dr. Conkle was operating within the standard of care in ordering a change in [plaintiff's] level of care."  (SUF No. 49; ECF No. 179-5, Martin Decl. at 15).  Plaintiff does not dispute SUF Nos. 42-44, 46, and he points to no evidence to support his dispute of SUF Nos. 45, 47-49.  (ECF No. 183 at 6-7).  Accordingly, the Court finds defendants' SUF Nos. 42-49 to be undisputed.

At the relevant time, defendant Tang was a Clinical Social Worker employed by CDCR.  She became a Licensed Clinical Social Worker at CDCR in September 2016.  (SUF No. 50).  On July 13, 2015, Ms. Tang was the On-Call Clinician at CSP-LAC, and she had the responsibility to interview the inmate, review the medical and mental health records, perform a suicide risk assessment, and determine an appropriate course of clinical action for the referral.  (SUF Nos. 56-57).  On the morning of July 13, 2015, Ms. Tang received a voice message from the Healthcare Appeals Coordinator indicating that plaintiff had threatened to harm himself if he was not able to change his primary clinician.  Following a review of plaintiff's medical records, Ms. Tang met with plaintiff for the first time.  (SUF Nos. 58-59).  Plaintiff told Ms. Tang that his primary clinician was prejudiced against him, complained about his level-of-care change from EOP to CCCMS, said that he did not want to return to the CCCMS yards, and that he felt the EOP level of care was beneficial.  (SUF Nos. 60-61).  During the interview with Ms. Tang, plaintiff was initially agitated,

but he later became calm and cooperative.  Plaintiff "did not report any active suicidal ideation or a plan to harm himself" during the interview.  (SUF No. 62).  After performing a suicide risk assessment of plaintiff, Ms. Tang concluded that plaintiff's acute suicide risk level was low.  (SUF No. 63; ECF No. 179-6 at 5, Tang Decl.).  Ms. Tang completed a Progress Note, documenting her encounter with plaintiff.  (SUF No. 64, citing Tang Decl., Ex. A, ECF No. 179-6 at 5, 8).  It was Ms. Tang's professional opinion, based on her education, experience, and clinical judgment, that "referring plaintiff to a higher level of care [MHCB] for suicide watch / precaution was not warranted at the time."  Plaintiff "appeared to be coping with situational stressors and did not present with any acute distress."  (SUF No. 65; ECF No. 179-6, Tang Decl. at 5).  Plaintiff does not dispute SUF Nos. 50-57, 59-64.  (ECF No. 183 at 7-9).  Plaintiff disputes SUF No. 65 without pointing to any evidence.  (*Id.* at 9).  Plaintiff purports to dispute, in part, SUF No. 58, by stating that his Health Care grievance did not indicate "self-harm if he cannot be placed in EOP," citing his Exhibit C.  (*Id.* at 8).  Plaintiff's own Exhibit C, however, states that he had been denied a request for health care services.  (*Id.* at 41-43).  Accordingly, the Court finds defendants' SUF Nos. 50-65 to be undisputed.

In the afternoon on July 13, 2015, Dr. Conkle received both a phone call and an email stating she was needed to assess a suicidal patient, who was identified as plaintiff.  (SUF No. 66). Dr. Conkle called Ms. Tang, who provided her clinical assessment of plaintiff based upon her encounter with him earlier in the day.  (SUF No. 67).  Dr. Conkle went to evaluate plaintiff in the shower section of the building where he was being housed.  Plaintiff had been placed by correctional officers in the shower in compliance with CDCR regulations.  (SUF Nos. 68-69).  Dr. Conkle performed a suicide risk assessment on plaintiff.  Plaintiff told her both that he did have a plan for suicide and that he did not have a plan for suicide.  (SUF Nos. 70-71).  Dr. Conkle informed the correctional officers that she was assessing plaintiff and would need to conduct a case consultation before deciding whether plaintiff could return to his cell.  (SUF No. 72).  Dr. Conkle then called Dr. Mintz (her supervisor) and Ms. Tang to discuss her assessment of plaintiff. (SUF No. 73).  Dr. Mintz was not assigned as plaintiff's primary care clinician, and he did not

16

speak with plaintiff on July 13, 2015.  Dr. Mintz had served as "the covering primary clinician" at an evaluation of plaintiff on June 11, 2015, and he had some familiarity with plaintiff's clinical history.  (SUF No. 74).  The notes that Dr. Mintz made from the June 11, 2015, assessment are attached to the Declaration of Mintz as Exhibit A.  (SUF No. 75).  Dr. Conkle, Dr. Mintz, and Ms. Tang met on July 13, 2015, and they agreed that plaintiff could safely be released back to custody and did not need to be placed on suicide watch.  Dr. Conkle made the decision to release plaintiff back to custody.  (SUF No. 76).  Plaintiff does not dispute SUF Nos. 66-67 and 69-76.  Plaintiff disputes SUF No. 68, but only with respect to the length of time that it took Dr. Conkle to come to the shower to conduct a suicide risk assessment, but this fact is not material.  (ECF No. 183 at 9-10).  Accordingly, the Court finds defendants' SUF Nos. 66-76 to be undisputed.

Plaintiff has admitted in deposition testimony that he does not know what Dr. Conkle and Dr. Mintz discussed, and he does not know what Dr. Conkle and Ms. Tang discussed.  Dr. Conkle's clinical consultation with Ms. Tang and Dr. Mintz was within the standard of care when dealing with a patient who is making suicidal threats.  (SUF Nos. 77-78; ECF No. 179-2, Plaintiff's Depo. at 9, 11).  Later that day, on July 13, 2015, plaintiff "cut his wrist superficially" and refused emergency medical treatment.  Plaintiff demanded that he first see mental health staff.  (SUF No. 79; ECF No. 179-4, Mintz Decl. at 9).  The protocol for assessing suicidal inmates is to attend to their medical issues first, ensure their safety, and then arrange an emergency psychological or psychiatric consultation.  (SUF No. 80).  Plaintiff was malingering and "feigned suicide" on July 13, 2015.  His demand that the mental health staff see him first "was manipulative and counter to accepted medical protocol."  This is further evidence that plaintiff was malingering and was not suicidal.  (SUF No. 81; ECF No. 179-5, Martin Decl. at 17-19).  Defendants were operating within the standard of care while evaluating plaintiff's complaints and properly addressed them therapeutically.  (SUF No. 82; ECF No. 179-5, Martin Decl. at 19).  Plaintiff does not dispute SUF Nos. 77-80, and he disputes SUF Nos. 81-82 without pointing to any evidence.  (ECF No. 183 at 10).  Accordingly, the Court finds defendants' SUF Nos. 77-82 to be undisputed.

Moreover, to the extent that plaintiff is purporting to propose any undisputed facts in the

numbered paragraphs of Plaintiff's SGI, his numbered paragraphs 1, 2, 4, 5, and 7 do not dispute any of defendants' proposed undisputed facts.  Further, because the Court has sustained defendants' objections to all of plaintiff's Exhibits, the paragraphs numbered 3, 6, and 8 to 24 (which point only to plaintiff's Exhibits as supporting evidence) are unsupported and fail to meet plaintiff's burden of presenting affirmative evidence to establish a genuine dispute of material fact. See, e.g., Galen, 477 F.3d at 658; (ECF No. 183 at 29-35).  Additionally, to the extent that plaintiff is intending to use his Declaration to support any of the proposed facts that purport to characterize the intent, understanding, or state of mind of any defendant, plaintiff cannot have personal knowledge of the intent or understanding of any other person and therefore is not competent to offer testimony on such issues. (See, e.g., *id.* at 30-35).  Accordingly, plaintiff has failed to comply with the requirements of Rule 56(c) that he set out specific facts in declarations or other evidence to show that a genuine issue of material fact exists for trial.

**V.**

**DISCUSSION**

**A.    EIGHTH AMENDMENT CLAIMS**

Plaintiff alleges that defendants violated the Eighth Amendment by failing to provide adequate treatment for his serious mental health needs on July 13, 2015.  (ECF No. 46 at 5).

In order to state a claim under the Eighth Amendment for inadequate medical care, a prisoner must show that a specific defendant was deliberately indifferent to his serious medical needs.  See Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed 2d 251 (1976).  "This includes both an objective standard -- that the deprivation was serious enough to constitute cruel and unusual punishment -- and a subjective standard -- deliberate indifference." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted).

First, to meet the objective element of a deliberate indifference claim, "a prisoner must demonstrate the existence of a serious medical need."  Id.  "A medical need is serious if failure

1  to treat it will result in significant injury or the 'unnecessary and wanton infliction of pain.'" Peralta

2  v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

3       Defendants do not dispute that plaintiff has serious mental health disorders and has been

4  receiving mental healthcare treatment from the CDCR.  Dr. Conkle, who, at the relevant time, was

5  a staff psychologist assigned as plaintiff's clinician, provided extensive therapy sessions, wellness

6  checks, and follow ups with plaintiff between January 2015 and the incident date.  Dr. Conkle

7  ultimately diagnosed plaintiff with a primary diagnosis of adjustment disorder with mixed

8  disturbance of emotions and conduct, and documented the personality disorders as secondary

9  and tertiary disorders.  (SUF Nos. 11-39).  Further, defendants do not dispute that, on July 13,

10  2015, Ms. Tang received a notification from the Healthcare Appeals Coordinator, on a Health Care

11  Grievance form, that plaintiff had threatened to harm himself.  Ms Tang, who was the On-Call

12  Clinician that day, performed a suicide risk assessment, and spoke with Dr. Conkle later that day.

13  (SUF Nos. 57-66).  Dr. Conkle evaluated plaintiff and performed a suicide risk assessment.

14  Plaintiff did tell Dr. Conkle that he a specific plan for suicide.  Dr. Conkle informed the correctional

15  officers who were holding plaintiff in a shower (in compliance with CDCR regulations) that she

16  would need to call for a case consultation before deciding whether plaintiff could safely be returned

17  to his cell.  (SUF Nos. 66-72).  It has long been clear that an inmate's vulnerability to suicide

18  constitutes a serious medical condition.  See, e.g., Lambert v. City of Dumas, 187 F.3d 931, 936

19  (8th Cir. 1999) ("The right to have medical needs addressed includes the right to be protected from

20  a known risk of suicide."); Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3rd Cir. 1991);

21  Garrett v. Grant, 2018 U.S. Dist. Lexis 121895, at *9-*11 (C.D. Cal. July 18, 2018) (noting that, to

22  show deliberate indifference to a prisoner's suicide risk, a plaintiff must allege that a defendant

23  actually knew that the inmate was "in substantial danger" of "imminent suicide" and failed to take

24  reasonable precautionary measures).  Accordingly, it is undisputed that plaintiff was suffering from

25  an objectively serious medical need on the day of the incident.

26       Second, to meet the subjective element of an Eighth Amendment claim, a prisoner must

27  "demonstrate that the prison official acted with deliberate indifference."  Toguchi v. Chung, 391

28

F.3d 1051, 1057 (9th Cir. 2004).  Deliberate indifference may be manifest by the intentional denial, delay, or interference with a prisoner's medical care.  See Gamble, 429 U.S. at 104-05.  The prison official, however, "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); see also Colwell, 763 F.3d at 1066-68 (a "prison official is deliberately indifferent . . . only if the official knows of and disregards an excessive risk to inmate health and safety" (internal quotation marks omitted)).  Thus, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute an Eighth Amendment violation. See Gamble, 429 U.S. at 105-07; Toguchi, 391 F.3d at 1059-60; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Moreover, the Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Gamble, 429 U.S. at 106. Accordingly, even "gross negligence" is insufficient to establish deliberate indifference.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Here, it is undisputed that both Ms. Tang and Dr. Conkle performed suicide risk assessments on plaintiff on July 13, 2015.  It also is undisputed that correctional officers acted in accordance with CDCR regulations by removing plaintiff to, and retaining him in, a shower until medical personnel made the determination of whether plaintiff faced an excessive risk to his health and safety.  Further, it is undisputed that Dr. Conkle, Dr. Mintz, and Ms. Tang conferred to assess plaintiff's medical condition and agreed that plaintiff could safely be released back to custody rather than placing him on suicide watch.  (SUF Nos. 73-76).

Later on the same day, plaintiff cut one of his wrists "superficially."  He then refused

emergency medical treatment and demanded that the mental health staff see him first. (SUF No. 79). Plaintiff does not even purport to dispute defendants' SUF No. 79 in which Dr. Mintz stated that plaintiff "cut his wrist superficially." (SUF No. 79; ECF No. 179-4, Mintz Decl. at 9).

It was the medical opinion of defendants that, on July 13, 2015, plaintiff was malingering. Prior to the incident date, Dr. Conkle had come to the conclusion that plaintiff's earlier claims of suicidal ideation were feigned and that plaintiff was malingering. Plaintiff's medical record reflects that other clinicians who had treated plaintiff before Dr. Conkle also had believed that plaintiff was malingering. (SUF Nos. 26-27, 65, 81). In addition, Dr. Conkle had ordered a change in plaintiff's level of mental health care based on her diagnoses of his mental health conditions. In the healthcare grievance that plaintiff dated on July 10, 2015, plaintiff threatened self-harm if he was not allowed to replace Dr. Conkle with a different primary clinician and be placed in the EOP level of care. Plaintiff complained to Ms. Tang on July 13, 2015, about the level-of-care change ordered by Dr. Conkle and said that he wanted to remain at the EOP level. (SUF Nos. 41-43, 47-49, 58, 61). It also is undisputed that plaintiff did not tell any defendant on July 13, 2015, that he had a *specific* plan for suicide. Accordingly, plaintiff has failed to point to any evidence to create a genuine dispute in defendants' undisputed facts showing that none of the defendants was subjectively aware that plaintiff was at substantial risk of committing suicide on July 13, 2015.

Further, it is the opinion of defendants' expert on mental health care that Dr. Conkle was operating within the standard of care in evaluating plaintiff's complaints, in ordering a change in plaintiff's level of care, and in consulting with Ms. Tang and Dr. Mintz following plaintiff's threat of suicide. (SUF Nos. 49, 78). Defendants' expert opined that plaintiff "was malingering on July 13, 2015," when "he feigned suicide," and his demand that the mental health staff see him first was "manipulative" and further evidence of malingering. Additionally, it is the expert's undisputed opinion "that Dr. Conkle was correct in her clinical decision" that plaintiff did not require increased mental health care on July 13, 2015, and that plaintiff's Interdisciplinary Progress Notes reflect that other doctors concluded that plaintiff's "suicide attempt on July 13, 2015, was malingering." (SUF No. 81; ECF No. 179-5, Martin Decl. at 18-19). Finally, it is the undisputed opinion of defendants'

expert that Ms. Tang, Dr. Conkle, and Dr. Mintz were "operating within the standard of care in evaluating [plaintiff's] complaints and properly addressed them therapeutically," and that none of the three defendants was deliberately indifferent to plaintiff's "risk of suicide" or the "level of mental health care required by" plaintiff on July 13, 2015.  (ECF No. 179-5, Martin Decl. at 19).

Plaintiff has not adduced the testimony of any witness with a "reliable basis in the knowledge and experience of his [or her] discipline," which would be required to offer an expert opinion on "specialized matters" such as the appropriate medical diagnosis for his symptoms or the appropriate treatment for an inmate who makes suicidal threats that appear manipulative.  See Kumho Tire Co., 526 U.S. at 147-48; Fed. R. Evid. 701, 702.  Nor did plaintiff point to **any** potentially admissible evidence in the record to support his speculative and/or conclusory assertions that Dr. Conkle "was prejudiced towards him" (ECF No. 183 at 3); that on July 13, 2015, he "told defendants that he's planning on killing himself" (id. at 24); that he "informed unit officers" that he had "a plan to kill himself" (id. at 30-31); that Dr. Conkle and Ms. Tang "fabricated Interdisciplinary Progress Notes / crisis evaluation documents on July 13, 2015" (id. at 25); or that defendants were "clearly aware that plaintiff was suicidal and plan [sic] on killing himself" on July 13, 2015 (id. at 32).  Further, plaintiff offered **no** potentially admissible evidence to contradict defendants' evidence that no defendant believed that plaintiff faced a substantial danger of imminently taking steps to commit suicide on July 13, 2015.  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor, 880 F.2d at 1045; see also Cafasso, 637 F.3d at 1061 (to defeat a summary judgment motion, "a plaintiff must set forth non-speculative evidence of specific facts"); Dzung Chu, 627 F.3d at 387 ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").

The Court finds that plaintiff's conclusory allegations and speculation are wholly insufficient to create a genuine dispute in any material fact.  Accordingly, the Court finds that defendants are entitled to summary judgement on plaintiff's Eighth Amendment claims.

/

**B.    CONSPIRACY CLAIMS**

Plaintiff also alleges that the three defendants conspired together to deny him mental health treatment on July 13, 2015.  (ECF No. 46 at 19).  Defendants agreed to "deny plaintiff to be [sic] admitted to a mental health crisis bed and to allow plaintiff to harm himself."  (*Id.* at 10).

In order to show a conspiracy under §1983, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights."  Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (quoting Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted)); see also Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (*en banc*).

Here, the undisputed evidence reflects that Dr. Conkle, Dr. Mintz, and Ms. Tang met on July 13, 2015, in order to discuss the results of the suicide risk assessments that had been performed and to determine if plaintiff could safely be released to custody.  Defendants' expert opined that such "clinical consultation with the other members of the treatment team was within the standard of care when dealing with a patient who is making suicidal threats."  (ECF No. 179-5, Martin Decl. at 17-18).  The three defendants agreed that plaintiff could safely be released back to custody and that he did not require referral to MHCB for a suicide watch because he appeared to be coping with situational stressors and was malingering.

Plaintiff summarily asserts in his Opposition that he "has evidence to prove conspiracy on the part of any [sic] of the defendants" (ECF No. 183 at 27), but plaintiff has failed to point to **any** potentially admissible evidence in the record to support his speculative and conclusory assertion that defendants shared the common objective of depriving plaintiff of his constitutional rights under the Eighth Amendment.  Further, because plaintiff is an inmate proceeding *pro se* in this civil rights case, the Court has reviewed the record and has found no potentially admissible evidence showing that any two of the defendants shared a common objective of denying plaintiff appropriate

or necessary mental health treatment on July 13, 2015.  Accordingly, the Court finds that plaintiff has failed to establish a genuine dispute as to any of defendants' material facts.  Further, based on those undisputed material facts, defendants have shown that plaintiff has failed to present even a scintilla of evidence to support his conspiracy claims.

For the reasons stated herein, defendants are entitled to summary judgment, and the Court recommends that defendants' Motion for Summary Judgment be granted and the action dismissed with prejudice.

## VI.

## <u>RECOMMENDATION</u>

**IT IS THEREFORE RECOMMENDED** that the District Judge issue an Order:

(1) approving and accepting this Final Report and Recommendation; (2) **granting** Defendants' Motion for Summary Judgment as to all claims (ECF No. 179); (3) **directing** that judgment be entering in favor of defendants; and (4) **dismissing this action with prejudice**.

DATED:  July 5, 2022

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.